IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BILL SOURINHO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:19-cv-00179 |
| ) | |
| RICH PRODUCTS CORPORATION, ) | JUDGE CAMPBELL |
| ) | MAGISTRATE JUDGE HOLMES |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 17). Plaintiff filed a Response in Opposition (Doc. No. 22), and Defendant filed a Reply (Doc. No. 24). For the reasons discussed below, Defendant's Motion for Summary Judgment will be **GRANTED.**

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff started working for Defendant in March 2015. (Doc. No. 25 at 21 ¶ 1). On February 7, 2018, Plaintiff's coworker, Sangchane, informed Plaintiff that her husband (also an employee of defendant), Kit, had threatened to kill Plaintiff at work. (Doc. No. 25 at 22 ¶ 5; *id*. at 7 ¶ 16). On February 9, 2018, Plaintiff and Sangchane reported Kit's threat to kill Plaintiff at work to the Murfreesboro Police Department ("MPD"). (Doc. No. 25 at 22 ¶ 7; *id*. at 7-8 ¶¶ 17, 18). On February 13, 2018, a detective from the MPD called Defendant and spoke with Plaintiff's supervisor about the circumstances involving Kit, Plaintiff, and Sangchane. (Doc. No. 25 at 22 ¶ 8; *id*. at 8 ¶ 20).

On February 14, 2018, before Plaintiff returned to work for the first time since February 7, 2018, Sangchane called Plaintiff and told him to be careful with Kit as he "could have a gun. Could be in a cooler. Could be in a car." (Doc. No. 25 at 23 ¶ 9). When Plaintiff reported to work that

day, his supervisor questioned him about the circumstances involving Kit, Plaintiff, and Sangchane. (Doc. No. 25 at 23 ¶ 10; *id.* at 9 ¶ 21). At some point later the same day, Plaintiff reported to his supervisor that Kit had a handgun in his lunchbox, a shotgun and gas can in his car, and that Kit had threatened to blow Plaintiff and Sangchane's heads off and burn their bodies. (Doc. No. 25 at 10 ¶ 22). Defendant contacted the MPD and requested that they be present when Kit arrived to work for his scheduled shift and to assist with a search of Kit and his vehicle on February 14. (Doc. No. 25 at 11 ¶ 24). Two MPD officers searched Kit, his lunchbox, workspace and vehicle in the presence Defendant representatives and did not find any weapons or gas cans. (Doc. No. 25 at 12 ¶ 25). Defendant suspended Plaintiff, Sangchane, and Kit from work pending its investigation. (Doc. No. 23 at 8 ¶¶ 23, 26). Defendant obtained a copy of the police report filed by Plaintiff and Sangchane, and conducted interviews with Plaintiff, Kit, and Sangchane. (Doc. No. 25 at 12-16 ¶¶ 27, 29, 31-36).

After its investigation, Defendant determined that Sangchane's version and Plaintiff's version of what had occurred were in conflict. (Doc. No. 23 at 12 ¶ 38; Doc. No. 25 at 24 ¶ 11). Defendant also determined that Plaintiff's initial conduct upon reporting to work on February 14 was inconsistent with the reports he made later that day about Kit. (Doc. No. 25 at 17-18 ¶ 39). On February 23, 2018, Defendant terminated Plaintiff's employment for violating its Standard of Conduct #14 – "gross misconduct that is detrimental to the image of [Defendant]." (Doc. No. 23 at 12 ¶ 40; Doc. No. 25 at 24 ¶ 11). Defendant believed that Plaintiff's reported threats concerning Kit were detrimental its image. (Doc. No. 25 at 18-19 ¶ 41). Defendant also considered Plaintiff's three prior unsubstantiated complaints against co-workers. (Doc. No. 25 at 24 ¶ 11; *see* Doc. No. 23 at 2-4 ¶¶ 5-8, 10-13). Defendant terminated Sangchane for violation of Standard of Conduct

2

#14 as a result of her inconsistent interview statements and statements to the police. (Doc. No. 23 at 13 ¶ 42). Defendant did not terminate Kit. (Doc. No. 25 at 19-20 ¶ 43).

On January 24, 2019, Plaintiff filed a Complaint in the Circuit Court for Rutherford County, Tennessee against Defendant, alleging wrongful termination in violation of the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 51-1-304. (*See* Doc. No. 1-1). Defendant removed Plaintiff's action to this Court on February 26, 2019. (Doc. No. 1). Defendant filed the pending motion for summary judgment on May 4, 2020, arguing that Plaintiff cannot establish the essential elements of his TPPA claim. (Doc. No. 17). Plaintiff argues that summary judgment is inappropriate because there are genuine issues of material fact in dispute.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby,*

3

*Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III. ANALYSIS

The Tennessee Public Protection Act ("TPPA"), provides that "[n]o employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities," Tenn. Code Ann. § 50–1–304(b), and it provides a cause of action for "discharge in retaliation for refusing to remain silent about illegal activities." *Williams v. City of Burns*, 465 S.W.3d 96, 110 (Tenn. 2015). A *prima facie* case under the TPPA requires proof of four elements:

> (1) the plaintiff was an employee of the defendant;
>
> (2) the plaintiff refused to participate in or remain silent about illegal activity;
>
> (3) the defendant employer discharged or terminated the plaintiff's employment; and
>
> (4) the defendant terminated the plaintiff's employment solely for the plaintiff's refusal to participate in or remain silent about the illegal activity.

*Id*. at 111. Notably, the TPPA requires the plaintiff to prove that retaliation for the protected conduct was "the sole reason" for his or her termination. *Id.* at 110. "The Tennessee General Assembly enacted 'a stringent standard and set the bar high for recovery' for a retaliatory discharge claim pursuant to the TPPA.'" *Jones v. City of Union City*, No. W201302358COAR3CV, 2015 WL 9257815, at *6 (Tenn. Ct. App. Dec. 17, 2015) (quoting *Williams*, 465 S.W.3d at 110). "The statute's use of the term solely means that an employee can prevail with a TPPA claim only if he

or she can prove that his or her refusal to participate in or to remain silent about illegal activities was the only reason for the termination." *Id*. (quoting *Williams*, 465 S.W.3d at 110-11) (internal quotations omitted).

In 2011, the Tennessee General Assembly amended Section 50–1–304 to add a subsection setting forth "a statutory burden-shifting framework to be applied to all claims under the TPPA, both for summary judgment motions and for trial." *Williams*, 465 S.W.3d at 112 n.15 (citing 2011 Tenn. Pub. Acts ch. 461). Currently, that subsection provides:

> In any civil cause of action for retaliatory discharge brought pursuant to this section, or in any civil cause of action alleging retaliation for refusing to participate in or remain silent about illegal activities, the plaintiff shall have the burden of establishing a prima facie case of retaliatory discharge. If the plaintiff satisfies this burden, the burden shall then be on the defendant to produce evidence that one (1) or more legitimate, nondiscriminatory reasons existed for the plaintiff's discharge. The burden on the defendant is one of production and not persuasion. If the defendant produces such evidence, the presumption of discrimination raised by the plaintiff's prima facie case is rebutted, and the burden shifts to the plaintiff to demonstrate that the reason given by the defendant was not the true reason for the plaintiff's discharge and that the stated reason was a pretext for unlawful retaliation. The foregoing allocations of burdens of proof shall apply at all stages of the proceedings, including motions for summary judgment. The plaintiff at all times retains the burden of persuading the trier of fact that the plaintiff has been the victim of unlawful retaliation.

Tenn. Code Ann. § 50-1-304(f).[1] Thus, an employee who establishes a *prima facie* case of retaliatory discharge creates a rebuttable presumption that the employer unlawfully retaliated against the employee. *Jones*, 2015 WL 9257815, at *6 (citing *Williams*, 465 S.W.3d at 115). The burden then shifts to the employer to articulate a non-retaliatory reason for the discharge. *Id*. (citing

---

[1] "When added in 2011, this subsection was designated subsection (g). 2011 Tenn. Laws Pub. Ch. 461." *Jones*, 2015 WL 9257815, at *6 n. 2. In the current version of the statute, it appears as subsection (f). Tenn. Code Ann. § 50–1–304 (2020).

5

*Williams*, 465 S.W.3d at 115). Tennessee courts have explained that the sole causation element of a TPPA claim has an important impact at this stage:

> In articulating a non-retaliatory reason for discharging the employee, the defendant employer in a TPPA case need not proffer evidence that unlawful retaliation was no part of its decision to terminate employment. Rather, the employer need only introduce admissible evidence showing that unlawful retaliation was not the sole cause of the employment action. That is, the employer must proffer evidence that, even if retaliation was a motivation for the discharge, there was at least one non-retaliatory reason as well.

*Id.* (quoting *Williams*, 465 S.W.3d at 115).

In its pending motion for summary judgment, Defendant has produced evidence that one or more legitimate, nondiscriminatory reasons existed for Plaintiff's termination. *See* Tenn. Code Ann. § 50-1-304(f). Specifically, Defendant has produced evidence that it terminated Plaintiff because, based on its investigation, it believed that Plaintiff's report of Kit's threated criminal activity was false; Plaintiff had a history of unproven allegations against his co-workers; and that it believed Plaintiff's false report about Kit had a detrimental impact on its reputation (Doc. No. 25 at 17-18 ¶¶ 38, 39, 41; *id.* at 24 ¶ 11). Accordingly, the burden shifted to Plaintiff to demonstrate that the reasons given by Defendant were not the true reasons for his termination and that the stated reasons were pretext for unlawful retaliation. *See Jones*, 2015 WL 9257815, at *8 (citing Tenn. Code Ann. § 50–1–304(f)).

To show pretext, a plaintiff can establish: (1) the proffered reason has no basis in fact; (2) the proffered reason did not actually motivate the termination; or (3) the proffered reason is insufficient to explain the termination. *See Walls v. Tennessee CVS Pharmacy, LLC*, 21 F. Supp. 3d 889, 899 (M.D. Tenn. 2014). Here, Plaintiff asserts that he "has shown that there is no basis in fact for defendant's termination decision. He was truthful with defendant at all times." (Doc. No. 22 at 9). However, Plaintiff is required to show more than a dispute over the facts upon which the

6

termination was based to show pretext. *See Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 502 (6th Cir. 2007). As noted by Plaintiff, in order to show that there was no basis in fact for the decision made, "a Plaintiff must put forth 'evidence that the proffered bases for the plaintiff's discharge never happened, i.e., that they are factually false.'" (Doc. No. 22 at 9 (quoting *Abdulnour*, 502 F.3d at 502)). Therefore, in order to show pretext in the present case, Plaintiff must put forth evidence that Defendant did not honestly believe its stated reasons for terminating him. *See Abdulnour*, 502 F.3d at 502-03 (citing *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) ("As long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect.")).[2] In his response, Plaintiff fails to produce evidence showing that Defendant did not honestly believe its stated reasons for terminating him. Because Plaintiff has failed to establish pretext, Defendant is entitled to summary judgment.

    An appropriate order will enter.

                                                  WILLIAM L. CAMPBELL, JR.
                                                  UNITED STATES DISTRICT JUDGE

---

[2] To the extent Plaintiff sought to challenge Defendant's reliance on the facts before it at the time of the decision to terminate him as unreasonable, his response fails to develop this argument or point to any evidence showing that Defendant's reliance on the facts before it at the time of the decision to terminate him was unreasonable. *See Blizzard v. Marion Tech. Coll.*, 698 F3d 275, 286 (6th Cir. 2012).